UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| WILLIAM JACKSON,<br><br>Plaintiff,<br><br>v.<br><br>BIOCLIMATIC AIR SYSTEM; TRADESMEN INTERNATIONAL, INC.;RICHARD SARGENT; BRADFORD NORTH; JOHN DOES 1-15 (Fictitious Individuals); JANE DOES 1-15 (Fictitious Individuals); ABC CORPS 1-15 (Fictitious Corps.); Jointly and Severally, Official and Individual Capacities,<br><br>Defendant. | JURY TRIAL DEMANDED<br><br>CASE NO. |

## COMPLAINT

Plaintiff, by and through undersigned Counsel, brings this Civil Action Complaint against Defendants: Bioclimatic Air System; Tradesmen International, Inc.; Richard Sargent; Bradford North; JOHN DOES 1-15 (Fictitious Individuals); JANE DOES 1-15 (Fictitious Individuals); and ABC CORPS 1-15 (Fictitious Corps.); Jointly and Severally, Official and Individual Capacities (hereinafter, collectively "Defendants"). Plaintiff seeks judgment of this Court against Defendants for relief permitted under the New Jersey Law Against Discrimination ("NJLAD"); New Jersey Employment Law and 42 U.S.C. § 1981, et seq. ("Section 1981") for Hostile Work Environment in violation of the New Jersey Law Against Discrimination, N.J.S.A. §§ 10:5-1, *et seq*. ("NJLAD"); Unlawful Termination based on Race in violation of the New Jersey Law Against Discrimination, N.J.S.A. §§ 10:5-1, *et seq*. ("NJLAD"); Past, Present, Future Emotional Distress in an Employment Law Case; Hostile Work Environment in violation of 42 U.S.C. § 1981, et seq. ("Section 1981"); Retaliation in violation of 42 U.S.C. § 1981, et seq. ("Section 1981"); Aiding

1

and Abetting Unlawful Conduct in violation of the New Jersey Law Against Discrimination, N.J.S.A. §§ 10:5-1, *et seq*. ("NJLAD"); and Unlawful Retaliation in violation of the New Jersey Law Against Discrimination, N.J.S.A. §§ 10:5-1, *et seq*. ("NJLAD").

## I.   PARTIES

1. At all relevant times herein, Plaintiff was an adult resident of the State of New Jersey residing in the City of Moorestown.

2. At all relevant times herein, Defendant Bioclimatic Air System, is a business in New Jersey and has a principal place of business at 600 Delran Parkway D, Delran, New Jersey 08075.

3. At all relevant times herein, Defendant Tradesmen International, Inc., is a business in Ohio with a principal place of business located at 9760 Shepard Road, Macedonia, Ohio 44056.

4. At all relevant times herein, Defendant Richard Sargent (hereinafter Defendant Sargent) was the Plant Manager of Bioclimatic Air Systems and Plaintiff's direct supervisor.

5. At all relevant times herein, Defendant Bradford North (hereinafter Defendant North) was the General Manager of Bioclimatic Air Systems and Defendant Sargent's direct supervisor.

6. At all times relevant herein, Defendants, John Does 1-15, are individuals, whose identities are not currently known, who are principals, agents, ostensible agents, servants and/or employees of Defendants and as such, they are vicariously liable and vicariously responsible for the negligent acts, grossly negligent acts and/or omissions and/or other wrongful and unlawful conduct on the part of Defendants set forth herein,

7. At all times relevant herein, Defendants, Jane Does 1-15, are individuals, whose identities are not currently known, who are principals, agents, ostensible agents, servants and/or employees of Defendants and as such, they are vicariously liable and vicariously responsible for

the negligent acts, grossly negligent acts and/or omissions and/or other wrongful and unlawful conduct on the part of Defendants set forth herein,

8. At all times relevant herein, Defendants ABC CORPS 1-15, are fictitious corporations representing unnamed entities whose identities are not currently known who are subsidiaries, parent companies, or otherwise affiliated corporations who are vicariously liable and vicariously responsible for the negligent acts, grossly negligent acts and/or omissions and/or other wrongful and unlawful conduct on the part of Defendants set forth herein.

9. At all relevant times herein, Defendants acted by and through its agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for the Defendants.

## II. FACTS

1. Plaintiff started working at Bioclimatic Air System through an employment agency called Tradesmen International LLC on May 4, 2022 as an Assembler.

2. As an Assembler, Plaintiff assembled different materials for the air systems Defendants utilized.

3. Plaintiff was performing all of his job responsibilities in a more than satisfactory manner and he received numerous compliments for the work he was doing.

4. About 2 weeks after Plaintiff started his position at Bioclimatic Air System, Plaintiff's supervisor Defendant Sargent, a white man, who was also the Plant manager, started using the "N word" (not abbreviated) regularly which made Plaintiff, a black man, very uncomfortable and caused him severe emotional distress.

5. Plaintiff expressed to Defendant Sargent that the use of the word made him very uncomfortable.

6. Defendant Sargent responded by saying that he used the "N word" for any ignorant person as he had looked up the definition in the dictionary and it meant an ignorant person.

7. Plaintiff told Defendant Sargent that his use of the word ignored the origins of the word that has been called the "atomic bomb of racial slurs" and whose use began during slavery as a derogatory, contemptuous, and racist way to demean, insult, disenfranchise, and justify violence against black people.

8. On another occasion, when Plaintiff asked if they were off for Juneteenth, Defendant Sargent asked "if that [Juneteenth] was a 'black' thing" and said that everyone goes through things comparing slavery to what white people went through during the Great Depression and the Civil War.

9. Plaintiff tried to explain to Defendant Sargent that what black people went through during slavery was not comparable but Defendant Sargent became defensive and did not understand the problem with what he said.

10. Plaintiff reported these incidences his employer agency Tradesmen International LLC who advised that they reported it to Defendant Sargent's boss Defendant North.

11. After Plaintiff reported what had happened to Tradesmen International LLC, Tradesmen International LLC said they would take care of the problem.

12. Tradesmen LLC then reported that Bioclimatic Air System was going to conduct an investigation and that Plaintiff would be out of work without pay pending their investigation.

13. Also around this time, Plaintiff received a text message from another employee, Brad Ward, an electric engineer at Bioclimatic Air System, that said: "Two new guys. We got a white guy now so you're out. Lol."

14. Plaintiff was never able to return to work Bioclimatic Air System after reporting Defendant Sargent's rampant use of the "N word" and other instances that created a hostile work environment as Plaintiff was effectively terminated.

15. Plaintiff also never heard back from either Defendant about the status of the investigation.

16. Plaintiff's last day of employment was June 28, 2022.

17. Only recently did Tradesmen LLC reach out to Plaintiff to ask if he was interested in working through their agency.

18. Tradesmen LLC, contrary to what they had promised Plaintiff, never took any action concerning Plaintiff's complaints of discrimination.

19. As a result of Defendants' intentional actions, Plaintiff has incurred substantial financial losses and severe emotional distress.

### III.    CAUSES OF ACTION

### COUNT I

### HOSTILE WORK ENVIRONMENT BASED ON RACE IN VIOLATION OF THE NEW JERSEY LAW AGAINST DISCRIMINATION, N.J.S.A. §§ 10:5-1, *et seq*. ("NJLAD")

17. Plaintiff repeats and incorporates by way of reference each and every allegation contained in the previous paragraphs as if fully set forth herein.

18. The factual allegations set forth in the complaint make out a claim under this count.

19. Plaintiff is African American and, as such, is a member of a protected class within the meaning of the New Jersey Law Against Discrimination ("NJLAD").

20. Plaintiff was subject to severe and/or pervasive conduct that was discriminatory (racist) on its face.

21. Our courts have found that the single use of the "n word" can form the basis for a hostile work environment claim.

22. Here, Defendant Sargent used the word freely and frequently around Plaintiff, a black man, and justified its use with a nonsense argument intended to clear his use of the "atomic bomb of racial slurs" when there is no place for that word in any workplace for any reason.

23. Defendant Sargent also made other statements that created a hostile work environment such as comparing slavery to the Great Depression and the Civil War to say essentially that white people have had to undergo hard times as well.

24. Moreover, it is clear that Defendants had animus towards people of color because of the aforementioned, his co-worker's text that Plaintiff was being replaced because two white people were hired, and the fact that Plaintiff was essentially terminated after he reported discrimination.

25. Defendants are liable because they knew or should have known of the harassment and discrimination and failed to take effective remedial measures to stop it or were the ones directly/indirectly perpetuating the harassment and discrimination Plaintiff suffered.

26. Additionally, Defendants are liable because they were negligent in failing to take reasonable steps to prevent and/or address the harassment and discrimination and also because they delegated authority to supervisors who abused that authority in order to discriminate against Plaintiff.

27. Defendants are also liable because they failed to maintain and/or enforce appropriate policies and practices to prevent, address and/or remedy discrimination and harassment in the workplace.

28. Finally, Defendants took adverse action against Plaintiff, which was motivated and/or determined by racism.

29. Defendants acted egregiously, maliciously, wantonly, or willfully in disregard of Plaintiff's rights under the NJLAD, therefore, punitive damages are warranted.

30. As a result of Defendants' actions, Plaintiff has suffered and continues to suffer damages.

**WHEREFORE**, Plaintiff demands judgments against Defendants, jointly or severally, together with an award of damages in an amount to be determined at trial, including compensatory damages, punitive damages, costs of suit, attorneys' fees and enhancements, interest, and any other relief as the Court deems just and necessary.

## COUNT II

### UNLAWFUL TERMINATION BASED ON RACE IN VIOLATION OF THE NEW JERSEY LAW AGAINST DISCRIMINATION, N.J.S.A. §§ 10:5-1, *et seq*. ("NJ LAD")

31. Plaintiff repeats and incorporate by way of reference each and every allegation contained in the previous paragraphs as if fully set forth herein.

32. Plaintiff is African American and, as such, is a member of a protected class within the meaning of the NJLAD.

33. Plaintiff was actually performing the job prior to his termination.

34. Plaintiff suffered an adverse employment action, i.e. termination of employment by Defendants.

35. The circumstances surrounding Plaintiff's termination give rise to an inference of discrimination.

36. Any non-discriminatory or non-retaliatory reason(s) alleged by Defendants for Plaintiff's termination are pretextual.

37. Defendants acted egregiously, maliciously, wantonly, or willfully in disregard of Plaintiff's rights under the NJLAD, therefore, punitive damages are warranted.

38. As a result of Defendants' actions, Plaintiff has suffered and continues to suffer damages.

**WHEREFORE**, Plaintiff demands judgments against Defendants, jointly or severally, together with an award of damages in an amount to be determined at trial, including compensatory damages, punitive damages, costs of suit, attorneys' fees and enhancements, interest, and any other relief as the Court deems just and necessary.

## COUNT III

## PAST, PRESENT, FUTURE EMOTIONAL DISTRESS IN AN EMPLOYMENT LAW CASE

39. Plaintiff repeats and incorporates by way of reference each and every allegation contained in this Complaint as if fully set forth herein.

40. The factual allegations set forth in the complaint make out a claim under this count.

41. Defendants' intentional actions in subjecting him to a hostile work environment with the regular use of the "atomic bomb of racial slurs" and then terminating Plaintiff from his position have caused Plaintiff great emotional distress, embarrassment, and humiliation.

42. Defendants are liable to Plaintiff for damages he has suffered as a result of their egregious, intentional conduct.

**WHEREFORE**, Plaintiff demands judgment against the Defendants, together with economic compensatory damages, non-economic compensatory damages, emotional distress damages, consequential damages, punitive damages, costs of suit, attorneys' fees and enhancements, interest, equitable front pay, equitable back pay, equitable reinstatement, and any other relief the court deems equitable and just.

## COUNT IV

## <u>HOSTILE WORK ENVIRONMENT IN VIOLATION OF 42 U.S.C § 1981</u>

43. Plaintiff incorporates by reference and realleges every allegation in this Complaint as if fully set forth herein at length.

44. The factual allegations set forth in the complaint make out a claim under this count.

45. 42 U.S.C § 1981 provides, in pertinent part: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." 42 U.S.C. § 1981(a).

46. Section 1981's prohibition against racial discrimination in the making and enforcement of contracts provides a cause of action to remedy race discrimination in the employment context.

47. The Third Circuit has recognized that § 1981 provides a cause of action for hostile work environment and the standards for a hostile work environment clam are identical under Title VII and § 1981. See, e.g., Ocasio v. Leigh Valley Family Health Center, 92 Fed. Appx 876, 879-80 (3d Cir. 2004) ("As amended by the 1991 Civil Rights Act, § 1981 now encompasses hostile work environment claims, and we apply the same standards as in a similar Title VII claim.").

48. At all relevant times herein, Plaintiff and Defendants were in an employment relationship entitled to the protections of 42 U.S.C. § 1981.

.49. At all relevant times herein, Plaintiff was and is an African American male.

50. At all relevant times herein, all named Defendants and supervisory employees of Defendants were and are Caucasian males.

51. At all relevant times herein, all employees or agents of Defendants knew that Plaintiff's race was African American.

52. At all relevant times herein, Defendants Sargent and North held supervisory authority over Plaintiff with respect to Plaintiff's employment and were authorized by Defendants Bioclimatic Air System and Tradesmen International, Inc. to take employment action against Plaintiff.

53. Defendant Sargent subjected Plaintiff to severe, pervasive and unreasonable verbal abuse, physical intimidation, threats of discipline, increased scrutiny, humiliation, subjugation, all of which had the cumulative effect of altering the terms and conditions of Plaintiff's employment with Defendants, where Defendant North permitted the same conduct be committed against Plaintiff.

54. At all times material, Defendants' conduct was not welcomed by Plaintiff.

55. At all times material, Defendants' conduct towards Plaintiff was motivated by Plaintiff's race.

56. At all times material, Defendants treated similarly-situated Caucasian employees more favorably in the terms and conditions of employment than African American employees, including Plaintiff.

57. At all times material, Defendants' conduct as alleged herein was so severe or pervasive that a reasonable African American employee in Plaintiff's position would find Plaintiff's work environment to be hostile or abusive.

58. At all times material, Plaintiff subjectively believed his work environment to be hostile or abusive as a result of Defendants' racially discriminatory conduct.

59. At all times material, Plaintiff opposed the discriminatory, harassing and retaliatory conduct of the named Defendants, and made good-faith efforts to take corrective action the through the channels available to him as an employee of Defendants.

60. At all times material, Plaintiff endured the discriminatory, harassing, and retaliatory conduct of the named Defendants as conditions of his continued employment with Defendants.

61. At all times material, Defendants knew or should have known about the unlawful harassment and discrimination against Plaintiff by its employees or agents, and Defendants failed to take prompt remedial action.

62. At all times material, the conduct of the named Defendants alleged in this Complaint created an actionable hostile work environment in which Plaintiff was subjected to severe, pervasive and unreasonable harassment and discrimination on the basis of his race.

63. The unlawful hostile work environment created by Defendants detrimentally affected Plaintiff and would have detrimentally affected a reasonable person in Plaintiff's position.

64. As alleged herein, the hostile work environment created and condoned by the named Defendants is an unlawful employment practice in violation of § 1981.

65. Defendants' unlawful employment practices were intentional, willful, and made with reckless indifference to Plaintiff's federally protected civil rights.

66. Defendants are vicariously liable for the unlawful actions of its employees or agents against Plaintiff in the course and scope of their employment with Defendants.

67. Defendants Sargent and North are individually liable for unlawful race discrimination against Plaintiff in violation of 42 U.S.C. § 1981.

68. Defendants are vicariously liable for the unlawful actions of its employees or agents against Plaintiff in the course and scope of their employment with Defendants.

69. As a direct and proximate result of Defendants' unlawful discrimination against Plaintiff in violation of § 1981, Plaintiff has suffered and continues to suffer emotional and financial harm.

**WHEREFORE**, Plaintiff demands judgment against the Defendants, together with economic compensatory damages, non-economic compensatory damages, emotional distress damages, consequential damages, punitive damages, costs of suit, attorneys' fees and enhancements, interest, equitable front pay, equitable back pay, equitable reinstatement, and any other relief the court deems equitable and just.

## COUNT V

## RETALIATION IN VIOLATION OF 42 U.S.C § 1981

70. Plaintiff incorporates by reference and realleges every allegation in this Complaint as if fully set forth herein at length.

71. The factual allegations set forth in the complaint make out a claim under this count.

72. The Supreme Court of the United States has held that retaliation claims are cognizable under § 1981. CBOCS West, Inc. v. Humphries, 553 U.S. 442 (2008).

73. In the Third Circuit, retaliation claims under § 1981 are subject to the same legal standards applicable to retaliation claims under Title VII. See, e.g., Cardenas v. Massey, 269 F.3d 251, 263 (3d Cir. 2001).

74. As alleged herein, Plaintiff engaged in protected activity under § 1981 including, but not limited to opposing Defendants' unlawful, racially discriminatory employment practices.

75. At all times material, Plaintiff acted under a reasonable, good-faith belief that Plaintiff's right to be free from discrimination in the workplace was being violated by Defendants' conduct.

76. As alleged herein, Defendants subjected Plaintiff to severe, pervasive and materially adverse verbal abuse, physical intimidation, threats of discipline, increased scrutiny, humiliation, and subjugation, all of which had the cumulative effect of altering the terms and conditions of Plaintiff's employment with Defendants.

77. Defendants subjected Plaintiff to the materially adverse actions alleged herein in direct response to Plaintiff's expressing opposition to Defendants' unlawful employment practices.

78. At all times material, Defendants' materially adverse conduct towards Plaintiff in retaliation for Plaintiff's protected opposition activity was sufficiently serious that it would dissuade a reasonable employee in Plaintiff's position from making or supporting a charge of discrimination against Defendants.

79. At all times material, Plaintiff's protected opposition activity was the determinative factor in some or all of Defendants' materially adverse actions against Plaintiff.

80. At all times material, Plaintiff's protected opposition activity was the but-for cause of some or all of Defendants' materially adverse actions against Plaintiff.

81. The temporal proximity between Plaintiff's protected activity and Defendants decision to take materially adverse action against Plaintiff is unusually suggestive of a retaliatory motive and gives rise to an inference of causation.

82. Defendants' materially adverse actions against Plaintiff in retaliation for Plaintiff's opposition to their unlawful employment practices was intentional, willful, and made with reckless indifference to Plaintiff's federally protected civil rights.

83. Defendants' materially adverse actions against Plaintiff in retaliation for Plaintiff's protected opposition activity is an unlawful employment practice in violation of §1981.

84. Defendants Sargent and North are individually liable for unlawful retaliation against Plaintiff in violation of 42 U.S.C. § 1981.

85. Defendants is vicariously liable for the unlawful actions of its employees or agents against Plaintiff in the course and scope of their employment with Defendants.

86. As a result of Defendants' retaliatory conduct in violation of § 1981, Plaintiff has suffered and continues to suffer emotional and financial harm.

**WHEREFORE**, Plaintiff demands judgment against the Defendants, together with economic compensatory damages, non-economic compensatory damages, emotional distress damages, consequential damages, punitive damages, costs of suit, attorneys' fees and enhancements, interest, equitable front pay, equitable back pay, equitable reinstatement, and any other relief the court deems equitable and just.

## COUNT VI

### AIDING AND ABETTING UNLAWFUL CONDUCT IN VIOLATION OF THE NEW JERSEY LAW AGAINST DISCRIMINATION, N.J.S.A. 10:5-1, et seq. ("NJLAD")

87. Plaintiff repeats and incorporates by way of reference each and every allegation contained in this Complaint as if fully set forth herein.

88. The factual allegations set forth in the complaint make out a claim under this count.

89. NJLAD makes it unlawful for "any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any acts forbidden under this act." N.J.S.A. 10:5-12(e).

90. Defendants had a legal duty to prevent and promptly remediate workplace discrimination as well as protect employees from retaliation.

91. The actions of Defendants were intended to and did aid, abet, incite, compel and coerce other supervisor's and manager's egregious and unlawful actions.

92. Specifically, Defendant North was advised of Plaintiff's allegations and took no action except for adverse action against Plaintiff thus aiding and abetting the discrimination.

93. As a result of the Defendants' aiding and abetting of workplace discrimination based on terminating Plaintiff due to his protected conduct, Plaintiff has suffered and will continue to suffer severe personal hardships including anxiety, emotional distress, adjustment problems, sleep disturbance, humiliation, mental pain and anguish, loss of wages, litigation expenses, counsel fees and such other and further losses as are established at trial.

94. By way of this complaint Defendants are on notice that any further actions against Plaintiff do constitute unlawful retaliation.

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly or severally, together with an award of damages in an amount to be determined at trial, including compensatory damages, punitive damages, costs of suit, attorneys' fees and enhancements, interest, and any other relief the Court deems equitable and just.

## COUNT VII

### UNLAWFUL RETALIATION IN VIOLATION OF THE NEW JERSEY LAW AGAINST DISCRIMINATION, N.J.S.A. §§ 10:5-1, *et seq*. ("NJLAD")

95. Plaintiff repeats and incorporates, by way of reference, each and every allegation contained in the previous paragraphs as if fully set forth herein.

96. Plaintiff is African American and, as such, is a member of a protected class within the meaning of the NJLAD.

97. Plaintiff reasonably believed that Defendants were engaging in discriminatory conduct on the basis of race.

98. Plaintiff objected to such discriminatory conduct to Defendants and made good faith complaints to Defendants.

99. As a result of Plaintiff's engagement in protected activity, Defendants took adverse employment action against him by way of termination of employment.

100. Defendants acted egregiously, maliciously, wantonly, or willfully in disregard of Plaintiff's rights under the NJLAD, therefore, punitive damages are warranted.

101. As a result of Defendants' actions, Plaintiff has suffered and continues to suffer damages.

**WHEREFORE**, Plaintiff demands judgments against Defendants, jointly or severally, together with an award of damages in an amount to be determined at trial, including compensatory damages, punitive damages, costs of suit, attorneys' fees and enhancements, interest, and any other relief as the Court deems just and necessary.

## RELIEF REQUESTED

**WHEREFORE**, Plaintiff, William Jackson, demands judgment in her favor and against the Defendant in an amount in excess of $1,000,000.00 together with:

A. Compensatory damages, including but not limited to: back pay, front pay, past lost wages, future lost wages, lost pay increases, lost pay incentives, lost opportunity, lost benefits, lost future earning capacity, injury to reputation, mental and emotional distress, pain and suffering;

B. Punitive damages;

C. Attorney's fees and costs of suit;

D. Interest, delay damages; and,

E. Any other further relief this Honorable Court deems just, proper, and equitable.

## DEMAND TO PRESERVE EVIDENCE

Defendants are hereby directed to preserve any and all physical, electronic and/or digital information or data pertaining in any way to Plaintiff's employment, to Plaintiff's allegations, causes of action or defenses to Plaintiff's allegations or causes of action as well as any and all evidence pertaining to any party or employee of any party, including but not limited to physical, electronic

16

and/or digital data (electronically stored information), web pages, social media profiles, pages or identities, emails, voice messages, text messages, instant messages or messaging systems, recordings, digital recordings, media images and videos, temporary memory, memory sticks, portable memory devices, laptops or computers, CDs, DVDs, USB devices, databases, computer activity logs, internet browsing history (including cookies), network access and server activity logs, word processing files and file fragments, back-up and archival files, imaging and facsimile files, electronic calendar and scheduling program files and file fragments as well as any other contact and relationship management data (e.g., Outlook, ACT!), electronic spreadsheet files and file fragments, related to this matter.  This includes a request that such information not be modified, altered, or deleted as a result of data compression or disk fragmentation (or other optimizations procedures), which processes you are hereby directed to suspend until such time as that data can be preserved, copied and produced.

In terms of paper information, Defendants are directed to preserve any and all documents, whether in draft or final form, including contracts or agreements, emails, memos, handbooks (past and present), policies (past and present), employment files, pay stubs or duplicates, spreadsheets, lists, charts, reports, notes, correspondence, photographs, investigative information or other documents which pertain in any way to the controversy, parties or witnesses in this matter.

## JURY DEMAND & TRIAL COUNSEL DESIGNATION

Plaintiff hereby demands a trial by jury.  Kathleen Redpath-Perez, Esquire of the Law Offices of Eric A. Shore is hereby designated trial counsel.

## INITIAL REQUEST FOR INSURANCE INFORMATION

Defendants are hereby requested to provide copies of any and all policies of insurance which may provide coverage for the claims and causes of action contained in this complaint.

Date: March 22, 2023

                              **LAW OFFICES OF ERIC A. SHORE, P.C.**

                        BY:     *Kathleen Redpath-Perez, Esq.*

                              **KATHLEEN REDPATH-PEREZ, ESQ.**
                              20 Brace Rd., Suite 325
                              Cherry Hill, NJ 08034
                              Tel.: (856) 433-6172
                              Fax: (856) 427-4008
                              Email: KathleenRP@ericshore.com
                              *Attorney for Plaintiff*